**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **TERRY LEE JOHNSON** | ) | |
| **ID# 1396487** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:09-CV-1864-N (BH)** |
| | ) | |
| **RICK THALER, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this case has been referred for findings, conclusions, and recommendation.

## I. BACKGROUND

On September 30, 2009, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for murder in cause F06-62529-V. Respondent is Rick Thaler, Director of TDCJ-CID.

### A. Factual and Procedural History

On March 30, 2006, the State indicted petitioner for the murder of Schulandria Jackson on or about February 15, 2006. (State Habeas Transcript, vol. 2:142-43). He pled not guilty and was tried before a jury on September 25, 2006. The jury found him guilty and sentenced him to seventy-two years' imprisonment. (R. 5:2, 62).

The state appellate court recounted the evidence presented at trial as follows:

> Roy Lee Foard, III, nineteen years old at the time of trial, testified that on the afternoon of February 15, 2006, he was at a CiCi's Pizza restaurant in Dallas, Texas, with his friend Rickey Hicks and two other acquaintances. Foard noticed that appellant, who was sitting in another part of the restaurant with a female companion, was looking at him and his friends as if he knew him. Hicks recalled that appellant was giving them a strange and "mean" look, as though they

had done something to offend him. One of Foard's friends asked appellant, "Say, do you know us?" Appellant replied, "No, I don't know y'all ho ass niggers." Appellant then leaned back and pulled a gun out of the front pocket of his sweatshirt. At that point, Hicks turned around, looked at appellant, and said, "Hold off. It ain't that type of party." Hicks recalled that the weapon was a .22 revolver. After displaying the weaon, appellant got up from his table and left the restaurant. Several minutes later, he walked back in and pointed the gun at them. Foard could not remember what appellant said but, according to Hicks, appellant yelled, "I'll kill all y'all ho ass niggers." Appellant and his female companion quickly left the restaurant.

Hicks telephoned his friend Kelli Oten to ask for a ride home. Oten's mother, Schulandria Jackson, was a close friend of the Hicks's family and was like an aunt to him. After Oten arrived at the parking lot of a nearby mini mall accompanied by her mother, Hicks ran toward their car, a Dodge Neon, and got in the back seat. As Jackson was backing out of a parking space, another car approached them traveling in the other direction. Oten knew the driver of the vehicle, Jeremy White, and she could see appellant leaning out of the passenger window of White's car with a gun in his hand. Hicks testified that the gun appeared to be a .380 automatic; Oten said it was a "small little handgun." Oten looked directly at appellant as he asked Hicks, "are you that ho ass nigger that was talking shit?" Hicks recalled him saying, "you one of the ho ass niggers from CiCi's, ain't you?

Jackson saw the gun and pushed Oten's head down as she tried to put the car in gear. Hicks saw appellant fire the gun and heard a single gunshot. His face was hit by broken glass. Then he heard Jackson say, "I think he shot me." She fell between the front seats of the car, spitting up and choking on blood. Appellant and White drove away.

Foard, meanwhile, was about to board the nearby DART train when he heard two gunshots coming from the direction of the mini mall parking lot. He got off the train and ran towards the area of the shooting. When he reached the Dodge Neon, he saw Jackson bleeding where she sat in the car. Oten was holding her. He also saw an "order model car" driving away from the scene of the shooting. At the police station, Foard viewed a photographic lineup and identified appellant as the man he saw in the CiCi's restaurant.

According to Dr. Reade Quinton, Dallas County Medical

Examiner, the bullet that killed Jackson entered the right side of her back and passed through her right sixth rib, the lower lobe of her right lung, her trachea and esophagus, and went into the upper lobe of her left lung.

Leonard Lee was working as a security guard at the nearby Lancaster and Kiest Shopping Center on the afternoon of February 15, 2006. At some point, he noticed a young woman had gotten out of a "little silver car" and was yelling at two men seated in an Oldsmobile in the parking lot. After the woman got back into her car, the Oldsmobile backed up slightly, positioning itself next to the silver car. The passenger in the Oldsmobile then leaned out of the window with his arm extended and pointed a "black pistol" toward the smaller vehicle. Lee heard two gunshots as the passenger of the Oldsmobile fired into the passenger side of the silver car. The Oldsmobile then "sped off" and fled the area. Lee ran to the other vehicle and found Jackson bleeding and Oten screaming hysterically. None of the occupants of the silver car had a gun and Lee did not see any of them point a weapon at the Oldsmobile.

After interviewing eyewitnesses, police officers investigating the murder soon identified Jeremy White and appellant as the suspects. Detective Donald Whitsitt testified that he recovered a bullet fragment from the rear floorboard of the Dodge Neon. The right rear window was broken. No gun was found in the Dodge Neon and Whitsitt did not find any indication that one had been fired from that vehicle. Investigating officers also discovered that Jeremy White had taken photographs with his cellular telephone on the day of the offense. Two of these photographs were enlarged and shown to the jury. The first photograph, State's exhibit thirty-seven, showed appellant holding a gun. The second photograph, State's exhibit thirty-eight, showed a gun, cigars, and a bag of marijuana. Shortly before leaving the witness stand, Hicks testified that the gun in State's exhibit thirty-seven looked like the weapon he saw appellant use to shoot Jackson.

Laura Fleming, a firearms examiner at the Southwestern Institute of Forensic Sciences (SWIFS), testified that the bullet fragments received by SWIFS in connection with this offense were consistent with a .380 caliber bullet. Fleming compared the gun in State's exhibits thirty-seven and thirty-eight with a Lorcin .380 semiautomatic handgun from the laboratory's reference collection and concluded the two guns had the same overall shape, exterior, trigger guard, and slide area.

> Vickie Hall, a trace evidence analyst at SWIFS, testified that gunshot residue evidence submitted to her revealed gunshot residue particle on the back of Jeremy' White's left hand. She believed it was possible for this evidence to have been deposited on his hand if he was positioned close to a gun that was fired inside a car he was driving. No gunshot residue particles were found on Jackson's hands.

*Johnson v. State*, No. 05-06-01401-CR, slip op. at 1-4 (Tex. App.–Dallas, Dec. 18, 2007, pet. ref'd).

On direct appeal, petitioner alleged that the evidence was legally and factually insufficient to support his conviction, that the jury charge allowed him to be convicted of murder without a unanimous jury verdict on one single criminal act, and that the trial court violated his due process rights when it allowed the State to correct a mistake with regard to a peremptory challenge. Petitioner's conviction was affirmed on direct appeal. His petition for discretionary review was refused as untimely filed *See* PD-0112-08. On November 10, 2008, petitioner filed a state habeas application alleging the same grounds for relief as in his federal petition plus other grounds. (S.H.Tr. I:2, 7-13). On August 26, 2009, the Court of Criminal Appeals denied relief without written order based on the findings of the trial court without a hearing. (S.H.Tr. I:cover).

On September 30, 2009, petitioner mailed his petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9). Respondent filed a response on April 6, 2010, and provided the state court records. No reply brief was filed.

**B. <u>Substantive Issues</u>**

Petitioner claims that: 1) his right to be convicted beyond a reasonable doubt was violated when the trial court denied defense counsel's objection to the jury charge because it did not require the State to elect a single theory of murder; 2) the trial court violated his right to a fair jury by permitting the State to correct a peremptory strike without requiring proof of mistake; 3) he received a constitutionally unfair trial because evidence of his alleged gang affiliation and a photograph of

petitioner exhibiting a hand gun were presented to the jury; and 4) petitioner was denied his constitutional right of confrontation during his jury trial. Respondent does not contend that petitioner failed to exhaust any of his claims at the state level.

**II. PROCEDURAL BAR**

Respondent contends that petitioner's third and fourth grounds for relief are procedurally barred because they were dismissed by the state habeas court.

The Supreme Court has held that when a claim was dismissed by a state court pursuant to an independent and adequate state procedural rule, federal habeas review of that claim is barred unless the prisoner can establish either cause for the default as well as actual prejudice as a result of the alleged violation of federal law *or* that failure to consider the claims would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989). To satisfy the independent and adequate requirements, the dismissal of a claim must "clearly and expressly" indicate that it rests on state grounds which bar relief, *and* the bar must be strictly and regularly followed by state courts and applied to the majority of similar claims. *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001), *citing Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995).

The Texas Court of Criminal Appeals has ruled that an objection at trial is needed to preserve even constitutional errors for appellate review. *See Allridge v. State*, 850 S.W.2d 471 (1991). The Fifth Circuit has held that the Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a claim. *Jackson v. Johnson*, 194 F.3d 641, 652 (5th Cir. 1999). It has also ruled that a claim is procedurally defaulted if the state habeas court explicitly found that the claim could have been but was not raised on direct appeal, unless one of the exceptions set forth in *Coleman* has been met. *Brewer v. Quarterman*, 466

F.3d 344, 347 (5th Cir. 2006).

Here, with respect to petitioner's third ground for relief, at trial, a Dallas police officer gave testimony at the punishment phase of the trial, without objection, that petitioner was a member of a gang. (R. 5:5-10). At the guilt phase of the trial, a photograph of petitioner holding a gun was admitted into evidence. Defense counsel's objection that the photograph was evidence of an extraneous offense was overruled. (R. 4:57-58). During closing arguments at the punishment phase of the trial, the prosecutor referred to the photograph of petitioner pointing to a gun, and argued that it was probably the murder weapon. The prosecutor also argued that petitioner was an admitted gang member. (R. 5:51-52, 59, 61). Defense counsel did not object to these closing arguments. As for petitioner's fourth ground for relief, he argued at the state habeas level that he was denied his right of confrontation when one of the State's witnesses, Kelli Oten, testified regarding a statement that petitioner's co-defendant, Jeremy White, made to her, apologizing for what happened to her mother. (S.H.Tr.I:29, 32). Defense counsel did not object at trial to Oten's testimony about White's statement to her. The state habeas court determined that petitioner's claims about the gang evidence and argument and the testimony of Kelli Oten were procedurally barred because they were not raised at trial or on appeal. (S.H.Tr.II:139-40). That court further determined that petitioner's claim about the photograph of him holding a gun was procedurally barred because it was not raised on direct appeal. (S.H.Tr.II:139-40). These findings were adopted by the Court of Criminal Appeals. (S.H.Tr.I:cover).

Petitioner's third and fourth grounds for relief were dismissed by the state court pursuant to independent and adequate state procedural rules, and petitioner was failed to either allege or show cause and prejudice for this default or a fundamental miscarriage of justice. Therefore, federal habeas review of these claims is barred.

## III. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). Here, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals in such writ. The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus apply to the claims raised in petitioner's federal petition.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case

differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. JURY CHARGE

In his first ground for relief, petitioner asserts that his right to be convicted beyond a reasonable doubt was violated when the trial court denied defense counsel's objection to the jury charge at the guilt phase of the trial. Defense counsel argued that although the State was permitted to submit separate application paragraphs for four different theories of murder, it should be required

to elect one theory to submit to the jury. This objection was overruled. (R. 4:62-3). Defense counsel then requested that the jury be required to unanimously agree on one theory of how the murder occurred in order for the defendant to be found guilty. This request was also denied. (R. 4:63-4). Petitioner contends that denying the defense's request that the State elect a single theory of murder under which to proceed rendered his conviction void because it was not predicated on the same criminal act. (Pet. at 7).

The State indicted petitioner for intentionally and knowingly causing the death of Schulandria Jackson by shooting her with a firearm, or, intending to cause serious bodily injury, committing an act clearly dangerous to human life by shooting her with a firearm and thereby causing her death. (S.H.Tr.II:142). At trial, the jury charge instructed the jurors that they should find petitioner guilty if they found beyond a reasonable doubt from the evidence either that: 1) he intentionally or knowingly caused the death of Jackson by shooting her, or intending to cause serious bodily injury to her, he committed an act clearly dangerous to human life by shooting her; or 2) he caused Jackson's death by shooting her with a firearm that he intentionally or knowingly shot at Rickey Hicks, intending to cause Hicks' death, and desiring, risking, or contemplating that another person would be injured or harmed; or 3) he committed an act clearly dangerous to human life which caused Jackson's death by intentionally or knowingly firing a firearm at Rickey Hicks, attempting to cause serious bodily injury to Hicks, and desiring, risking, or contemplating that another person would be injured or harmed. *Johnson v. State*, slip op. at 7-8.

The state habeas court denied this claim on its merits. (S.H.Tr.I:cover; S.H.Tr.II:138-39)). This denial is not contrary to federal law. Under the applicable Texas statute, a person is guilty of murder if he intentionally or knowingly causes the death of an individual or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes a death. TEX.

PENAL CODE ANN. § 19.02(b) (Vernon 2003). Furthermore, under Texas law, a person is criminally responsible for causing a result if the only difference between what actually occurred and what he wanted is that a different person was harmed. TEX. PENAL CODE ANN. § 6.04(b)(2) (Vernon 2003). The jury charge therefore tracked the applicable Texas statutes.

This same issue was also addressed on direct appeal, and the state appellate court held that, under Texas law, the jury charge did not violate petitioner's right to an unanimous verdict because the four different theories of murder that the jurors were permitted to choose when voting to convict petitioner of murder were merely different means of committing the same offense, that being shooting and killing Jackson, and they are not different criminal acts. Therefore, the state court held that state law did not require that the jury unanimously agree on which alternative means petitioner used to commit the offense. *Johnson*, slip op. at 8-9. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

Furthermore, as noted by respondent, pleading the method of committing a crime in the conjunctive in an indictment, but instructing the jury in the jury charge in the disjunctive, is also permissible under federal law where a statute may be violated in more than one way. *See United States v. Pilgrim*, 922 F.2d 249, 253 (5th Cir. 1991). The Supreme Court has held that due process does not require that a jury agree on one of the alternative theories of a crime where the alternative theories, like in this case, involve different mental states on the part of the defendant. *Schad v. Arizona*, 501 U.S. 624, 631-32 (1991). This ground is therefore without merit and should be denied.

## V. PEREMPTORY CHALLENGE

In his second ground for relief, petitioner asserts that the trial court violated his constitutional right to a fair jury by allowing the prosecutor to correct a peremptory strike without providing proof of mistake. After voir dire questioning had concluded in petitioner's trial, some veniremembers had been excused by agreement or for cause, and both sides had submitted their lists of peremptory strikes, the prosecutor informed the trial judge that he made a clerical error on his strike list. The prosecutor explained that he intended to strike Juror 6 because she was a counselor at Homeward Bound, and he therefore did not consider her a good juror for the prosecution, but he wrote down Juror 7, a juror the defense also struck. He asked the trial judge for permission to change the strike. The defense objected on the basis that the prosecutor had seen the defense peremptory strikes and therefore had an unfair advantage. The trial court overruled the objection and allowed the prosecutor to change the strike. (R. 2:99-100). The jurors who served on petitioner's jury were then called and subsequently sworn in as jurors. (R. 3:2).

Petitioner asserts that his constitutional right to a fair jury was violated when the trial court permitted the prosecutor to substitute a different peremptory strike. Petitioner further contends that the prosecutor should have been required to prove his mistake rather than being permitted to simply assert that he made a mistake. This ground was denied on its merits at the state habeas level. (S.H.Tr.I:cover; S.H.Tr.II:138-39). This denial is not contrary to federal law. This ground was also addressed on direct appeal. There, the state appellate court held that the trial court had not abused its discretion in permitting the prosecutor to change a peremptory strike because Texas case law requires that the mistake be brought to the court's attention before the jury has been sworn and requires that an explanation be provided for the mistake, rather than a mere assertion, and both of these circumstances were present in petitioner's case. *Johnson*, slip op. at 9-12. As noted earlier,

in federal habeas proceedings the court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

Petitioner argues, as he did at trial, that the State had an unfair advantage because the prosecutor knew what strikes the defense made and therefore received an additional peremptory challenge. Petitioner has the constitutional right to an impartial jury. *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). However, the Supreme Court has held that peremptory challenges are not a federal constitutional right, but rather, one state-created means to ensure the constitutional right of an impartial jury and a fair trial. *Georgia v. McCollom*, 505 U.S. 42, 57 (1992). The Fifth Circuit has held that the erroneous granting of the government's challenge for cause is not reversible error even if it may have altered the final composition of the jury. *United States v. Prati*, 861 F.2d 82, 87 (5th Cir. 1988). Citing to *Ross v. Oklahoma*, the *Prati* court stated that the "pertinent inquiry" is whether the jurors who actually sat on the jury were impartial as required under the Sixth Amendment. *Id.* at 87. Petitioner has failed to argue, much less prove, that his jurors were not impartial. His second ground for relief is therefore without merit and should also be denied.

## VI. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VII. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED on this 18th day of May, 2010.**

**IRMA CARRILLO RAMIREZ**
**UNITED STATES MAGISTRATE JUDGE**

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE